## Davis Trust

*H. Gilmore Schmidt,* for accountant.

*Charles C. Keller* and *Alexander W. Acheson,* for beneficiaries.

MARINO, P. J., April 18, 1969.—The problem before the court is the determination of the income beneficiary of this trust fund. The trustee has filed an account and has requested that the court make such determination.

W. H. Davis established this trust in 1943 by execution of the deed of trust. The net income was payable to him during his lifetime and thereafter to his nomi-

nee. After the death of the survivor, which occurred in 1960, the trust instrument provides that ". . . the Trustee is directed to pay the net income of the trust property, semi-annually to Washington and Greene Counties Council No. 720 Boy Scouts of America, for so long as the said Council shall be in existence. In the event that the said Council No. 720 shall be dissolved or discontinued, then in that event the Trustee is directed to pay the said net income from the Trust property, semi-annually to the First Presbyterian Church of Washington."

It appears that on or about January 1, 1965, the trustee was advised of a change of name of the organization from "Washington and Greene Counties Council No. 720, Boy Scouts of America" to "Nemacolin Trails Council No. 720, Boy Scouts of America." The change of name was deemed appropriate because additional territory in Fayette and Westmoreland Counties was added to the district. The trustee notified the First Presbyterian Church of Washington concerning this change, and expressed the opinion that said Council No. 720 had not thereby been "dissolved or discontinued," and consequently continued to pay the trust income to the council. We have no record of any church remonstrance at that time.

About two years later, said Council No. 720 merged with the Allegheny Council, Boy Scouts of America to form the Allegheny Trails Council, Boy Scouts of America, effective June 15, 1967, which said organization continues in existence today. It is stated that the merger was effected to better serve the various districts comprising this Council. None of the original districts has been eliminated. The Washington-Greene County Council No. 720 comprised four main districts, namely, Catawba (Washington area); Iroquois (Burgettstown, Houston, Canonsburg, and Peters Township area); Greene (all of Greene County); Mon Val-

ley (Charleroi; Monongahela, Donora, and California). When the name of the council was changed to Nemacolin Trails Council, the districts of portions of Fayette and Westmoreland Counties were added to the areas serviced by the council.

On final merger with Allegheny, *all of these territories* were included in the areas merged; there were then joined to these districts those of Allegheny Council in Allegheny County (about 80 percent of the territory of said county) and all of Beaver County. Many improvements were said to have been occasioned by the merger. The Washington and Greene County Boy Scouts have derived many benefits from the merger, it is claimed.

In camping, they were formerly confined to one camp, that near Amity named Anawanna; now they have four different summer camps which they may choose. Available to them now is the Hillman Reservation near Morgantown, West Virginia, containing 3,500 acres. They have available more professionally trained scout executives; more specialists in camping and scout activities. Increased funds have been spent locally on the programs in the Washington-Greene County area.

Of general interest, it should be noted that the Boy Scouts of America is an organization chartered by the Congress. Portions of the basic responsibility are parceled to local councils with specific geographic areas. The boy scout programs are then the responsibility of the local council within their assigned geographical territory. The national council has authority to protect the uniform badges and insignia of the Boy Scouts of America; the local councils must promote the programs of the national council, and they may employ only commissioned personnel certified by the national council. There are about 500 local councils in the Commonwealth.

Of course, the legal question posed is, do we have a change of beneficiary by reason of the change of name when the merger was effected, or, for that matter, even before the merger, when the original name was changed? The inaction of the church body when notified of the change would have no bearing on the result if, as a matter of law, there was indeed a cessation of existence, within the intent of the settlor of this trust.

It may be stated definitely that there is no call for the application of the doctrine of *cy pres* here. The Estates Act of April 24, 1947, P. L. 100, sec. 10, 20 PS §301.10, provides in pertinent part: "Except as otherwise provided by the conveyor, if the charitable purpose for which an interest shall be conveyed shall be or become indefinite or impossible or impractical of fulfillment . . . the court may . . . order an administration or distribution of the estate for a charitable purpose in a manner as nearly as possible to fulfill the intention of the conveyor, whether his charitable intent be general or specific."

It is manifest that the language of The Estates Act of April 24, 1947, supra, renders the doctrine of *cy pres* applicable only when the charitable purposes of the conveyor or settlor are frustrated and incapable of meaningful fulfillment. Hence, *in limine,* we must decide whether a merger of the corporations such as has been described, would *per se* cause a frustration of the purposes of the charitable trust, thus necessitating the application of *cy pres.*

This situation seems to be controlled by the Nonprofit Corporation Law of May 5, 1933, P. L. 289, sec. 809, as amended, 15 PS §7809, which provides in pertinent part: "Any devise, bequest, gift or grant contained in any will or other instrument, *in trust or otherwise,* made before or after such merger or consolidation, to or for any of the constituent corpora-

tions, *shall inure to the surviving or new consolidated corporation,* as the case may be." (Italics supplied.)

Of course it would yet be a pertinent inquiry to consider the effects of the merger on the utilization of the trust funds. But we can definitely state that the consummation of a merger *per se* does not affect the charitable purposes of a trust fund and hence does not render necessary the application of *cy pres.* See Bodine Trust, 429 Pa. 260 (1968). The consolidated corporation will be entitled to receive the trust funds as a matter of law, *unless the settlor evidences a contrary intention.* See Scott, Trusts (3d ed. 1967) §397.3 and Restatement Trusts §399, comment o (1959).

Hence, the utilization of the trust funds by the merged corporation must be considered. Does the surviving corporation continue to carry out the terms of the trust in accordance with the settlor's intent? Can this be accomplished in spite of the change of name and the inclusion of additional territory in the districts covered by the new corporation? We believe both questions should be answered in the affirmative. The settlor shows no particular attachment, sentimental or otherwise, for adherence to the proper name of the geographical entity comprising the counties of Washington and Greene. He happened to live in Washington County at the time and would naturally give preference to his home county. We can envision no reason whatever for the inclusion of Greene County other than the fact that it was already embraced in the territory covered by the Boy Scout council known as "Washington and Greene Counties Council." It is clear beyond cavil that Mr. Davis intended this trust to benefit the Boy Scouts of America generally, and his home district specifically. So long as these are being benefited, his charit-

able purposes are not being frustrated. That these districts are now included in a larger geographical unit is no cause for complaint. The purposes of the boy scout organization are being advanced in his home district in many ways exceeding the original program.

Nor do we do violence to settlor's provision that this trust fund remain for the use of the boy scouts only so long as the council exists and shall not "be dissolved or discontinued." There is no real dissolution in the matter of merger. Both organizations continue to exist in the merged unit. True, there is a change of name, but the purposes and scope continue to exist. Only the territory is expanded. It is significant that the territory was expanded in 1965 when the original council became known as the Nemacolin Trails Council, districts in both Fayette and Westmoreland Counties being added.

We believe that the record shows that W. H. Davis was genuinely interested in the Boy Scouts of America. He had once been president of his home council; he had been awarded the council's highest award— the Silver Beaver. It is difficult for us to believe that he intended to deprive this organization of the funds he so generously provided simply because the name of the council was changed and that it became part of a larger boy scout unit. We do not feel that the local council was "dissolved or discontinued" within the meaning and intent of the trust indenture: McCully's Estate, 269 Pa. 122 (1920); Arnold's Estate, 56 D. & C. 662 (1946).

This being our view of the law, we are of the opinion, and so hold, that the trust has not failed and determined, and that the present council is entitled to continue as the income beneficiary of the said trust fund.